IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARBBIE M. HODGE,

        Petitioner,                  No. CIV S-02-2157 DFL EFB P

    vs.

THOMAS L. CAREY, WARDEN, et al.,

        Respondents.              FINDINGS & RECOMMENDATIONS

        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is in custody pursuant to a 1979 Los Angeles County conviction on a charge of second degree murder. In the petition for writ of habeas corpus filed in this action on October 2, 2002, petitioner attacks a decision of the California Board of Prison Terms rendered on March 7, 2001, finding him not suitable for parole. Petitioner alleges that his right to due process was violated because he was denied copies of his trial transcripts for use at his parole hearing in order to contest facts found by the parole board. The undersigned recommends that petitioner's application for habeas corpus relief be denied.

////

////

1

# I.

# BACKGROUND

In 1979, petitioner was convicted of second degree murder for beating another man to death with a baseball bat. Pet. at 2. He received a sentence of 16 years-to-life in state prison. *Id.* The state court record reflects that on January 14, 1979, petitioner's then girlfriend, Barbara Hines, got into a physical fight with Claire Hoff. Answer, Ex. D at 9. The fighting started in a house, but continued in the middle of the street. *Id.* at 11. Petitioner remained in the house during the beginning of the fight, but when he heard Hines call his name he came out into the street. *Id.* at 11-12. When petitioner came out of the house, he saw the victim swinging a window frame at Hines. *Id.* at 12. Petitioner then picked up a baseball bat and hit the victim on the head with it, causing his death. *Id.* at 12-13, 14, 18.

On March 7, 2001, the Board of Prison Terms (BPT or Board) held a parole consideration hearing and found petitioner not suitable for parole.[1] *Id.* at 1. Petitioner subsequently challenged the Board's decision in a petition for a writ of habeas corpus filed in the Solano County Superior Court. Pet. at 3 & Ex. A. That petition was denied on November 30, 2001, on the basis that petitioner had failed to plead sufficient grounds for relief. *Id.* Petitioner filed another habeas petition in the California Court of Appeal for the Third Appellate District, which was summarily denied on January 10, 2002. *Id.* A subsequent habeas petition filed in the California Supreme Court was summarily denied on September 11, 2002. *Id.*

On April 1, 2002, petitioner filed a petition for a writ of habeas corpus in this court in case No. CIV S-02-688 DFL GGH P, in which he also challenged the Board's March 7, 2001 decision to deny him a parole date.[2] Petitioner alleged that the parole suitability hearing was

---

[1] Petitioner represents that this hearing was his tenth parole suitability hearing. Pet., Ex. A at consecutive p. 4.

[2] *See Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial notice may be taken of court records), *aff'd*, 645 F.2d 699 (9th Cir. 1981).

2

1  conducted after the one-year statutory time limit, that he was denied parole without any evidence
2  that he posed a threat to public safety, and that the Board has a no-parole policy for prisoners
3  convicted of murder. Petitioner's claim that the suitability hearing was conducted after the one-
4  year statutory time limit was dismissed as moot. Petitioner's claims that he was denied parole
5  without any evidence that he posed a threat to public safety and that the BPT has a "no parole
6  policy" were dismissed without prejudice on the basis that the claims were not exhausted in state
7  court. Petitioner subsequently filed a request for a certificate of appealability, which was denied
8  by this court and by the United States Court of Appeals for the Ninth Circuit.

9        On August 2, 2002, petitioner received another parole suitability hearing at which he was
10 found not suitable for parole. Answer at 7. On September 25, 2003, petitioner received another
11 parole suitability hearing at which the BPT found him suitable for parole. Answer, Ex. G.

12       Petitioner filed the instant petition for a writ of habeas corpus on October 2, 2002.
13 Petitioner alleges that his rights to due process and equal protection were violated because he
14 was denied copies of his trial transcripts for use at his parole hearing in order to contest facts
15 found by the parole board. On March 10, 2003, respondents filed a motion to dismiss on the
16 grounds that there is no federal constitutional requirement that a prisoner be given a trial
17 transcript to prepare for parole consideration hearings and that petitioner had failed to allege a
18 protected status for equal protection purposes. By order dated September 17, 2003, this court
19 found that petitioner had failed to state an equal protection claim and requested further briefing
20 on petitioner's due process claim in light of the then recent case *Biggs v. Terhune*, 334 F.3d 910,
21 915 (9th Cir. 2003). The motion to dismiss was denied without prejudice.

22       On October 16, 2003, respondents filed an answer. They contend that: (1) the instant
23 petition is moot because petitioner received several suitability hearings after the March 7, 2001
24 hearing and has now been found suitable for parole; (2) the instant petition should be dismissed
25 because it is successive to the habeas petition filed in this court on April 1, 2002; and (3) the
26 petition should be denied on the merits because petitioner received all the process that was due at

3

the March 7, 2001 suitability hearing.

## II.

## ANALYSIS

**A. Mootness**

Respondents contend that the instant petition should be dismissed as moot because petitioner has received several parole suitability hearings since the hearing held on March 7, 2001, and was found suitable for parole at a hearing held on September 25, 2003. They argue, in essence, that petitioner has already received the only possible remedy for a due process violation at the March 7, 2001 hearing: a new suitability hearing and a finding of parole suitability. In the traverse, petitioner agrees that he was found suitable for parole after the September 25, 2003 hearing, but denies that he received a parole date or was granted parole. Traverse at 7, 14. He states, "the petitioner and prisoner was found suitable for parole contrary to respondents bare assertion that the Board granted petitioner parole is not true and the instant habeas claim now before the court for review and release are not moot and deserves to be heard." *Id.* at 7. This court has independently verified that petitioner is still in custody.

"[A] case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A case properly brought in the first instance is rendered moot when "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Chang v. United States*, 327 F.3d 911, 918 -919 (9th Cir. 2003) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). The party asserting mootness "carries a heavy burden of establishing that no effective relief remains for the court to provide." *Id.* (quoting *GATX/Airlog Co. v. United States District Court*, 192 F.3d 1304, 1306 (9th Cir. 1999)).

////

4

Although it is clear that petitioner received at least two parole suitability hearings after the March 7, 2001 hearing and was found suitable for parole at the conclusion of one of those hearings, this court is not convinced that the instant petition is moot.  The reason for petitioner's continuing custody is not contained in the record before this court.  However, because petitioner has not yet been released, it is not certain that events have "completely and irrevocably" eradicated the effects of any due process violation that may have occurred at petitioner's March 7, 2001 suitability hearing, or that no effective relief remains for the court to provide.  The court also notes that a subsequent hearing does not necessarily cure defects that occurred at a prior hearing.

In addition, when challenged action or conduct in a case is "capable of repetition, yet evading review," the fact that a court cannot give the full relief sought will not render the case moot.  *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000).  Under this exception to the mootness doctrine, "a court may consider the merits of a case that would otherwise be deemed moot when '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'"  *Caruso v. Yamhill County ex rel. County Com'r*, 422 F.3d 848, 853 (9th Cir. 2005) *(*quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  *See also Hubbart v. Knapp*, 379 F.3d 773, 777 (9th Cir. 2004) (habeas petition challenging a two-year commitment under California's Sexually Violent Predators Act was found to "evade review" because its duration was too short to be fully litigated prior to its expiration).

In the event that petitioner is continuing to receive parole consideration hearings, the issues raised by petitioner in this action could arise in a subsequent parole hearing.  Moreover, given the frequency with which parole hearings are held, the time it takes for a petitioner to exhaust state court remedies with respect to each claim, and the time required for a decision in this court, it is possible that petitioner's claims as to a particular suitability hearing could always be considered "moot" at the time a decision is rendered.  The court concludes that petitioner's

claims may be capable of repetition yet evading review, thereby defeating a finding of mootness.

For the foregoing reasons, this court will not recommend that the instant petition be dismissed as moot.

**B.  Successive Petition**

Respondents also argue that the instant petition should be dismissed as successive to petitioner's application for a writ of habeas corpus filed in this court on April 1, 2002, and/or that the instant petition is an abuse of the writ process.  Respondents note that petitioner is challenging the same parole consideration hearing that was the subject of his earlier habeas petition.  They argue that petitioner was aware at the time he filed his previous petition that he had not been supplied with transcripts of his trial proceedings and therefore could have raised that claim in the earlier petition or "asked that the petition be stayed so that he might exhaust the claim concerning the trial transcripts in the California courts."  Answer at 6.  Petitioner denies that his petition is successive or an abuse of the writ.

> 28 U.S.C. § 2244(b)(2) provides in relevant part that
>
> A claim presented in a second or successive habeas corpus application . . . that was not presented in a prior application shall be dismissed unless –
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; . . . .

28 U.S.C. § 2244(b)(2).  The AEDPA does not define the terms "second or successive." However, the United States Supreme Court, the Ninth Circuit, and other circuit courts "have interpreted the concept incorporated in this term of art as derivative of the 'abuse-of-the-writ' doctrine developed in pre-AEDPA cases."  *Hill v. State of Alaska*, 297 F.3d 895, 897-98 (9th Cir. 2002).  "An 'abuse-of-the-writ' occurs when a petitioner raises a habeas claim that could have been raised in an earlier petition were it not for inexcusable neglect."  *Id.* at 898 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).  "[T]he abuse-of-the-writ doctrine [has] concentrate[d] on a petitioner's acts to determine whether he has a legitimate excuse for failing to

6

1 raise a claim at the appropriate time." *McCleskey*, 499 U.S. at 490.

2    A habeas corpus petition is not a second or successive petition if an initial petition is "unadjudicated on its merits." *Slack v. McDaniel*, 529 U.S. 473, 486 (2000). Here, petitioner's first habeas petition was dismissed on the grounds of failure to exhaust and mootness and was never adjudicated on the merits of the claims raised therein. This court therefore finds that the instant application is not a second or successive petition and should not be dismissed on that basis.[3]

**C. Merits Review**

    **1. Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 573 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

////

---

[3] In Slack, the initial petition was a § 2254 petition dismissed without prejudice for failure to exhaust state remedies. This court finds that the rationale underlying the decision in Slack applies equally to the instant action.

7

1    Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court
2 may grant the writ if the state court identifies the correct governing legal principle from the
3 Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's
4 case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because
5 that court concludes in its independent judgment that the relevant state-court decision applied
6 clearly established federal law erroneously or incorrectly.  Rather, that application must also be
7 unreasonable."  Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not
8 enough that a federal habeas court, in its independent review of the legal question, is left with a
9 'firm conviction' that the state court was 'erroneous.'")

10   The court looks to the last reasoned state court decision as the basis for the state court
11 judgment.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a
12 decision on the merits but provides no reasoning to support its conclusion, a federal
13 habeas court independently reviews the record to determine whether habeas corpus relief is
14 available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

15   **2. Due Process**

16   Petitioner claims that the failure of the BPT to find him suitable for parole deprived him
17 of his liberty without due process of law.

18   A protected liberty interest may arise from either the Due Process Clause of the United
19 States Constitution or state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The
20 United States Constitution does not, of its own force, create a protected liberty interest in a
21 parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).
22 However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that
23 parole release will be granted' when or unless certain designated findings are made, and thereby
24 gives rise to a constitutional liberty interest."  *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir.
25 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).  California's
26 parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners

8

1  who have not already been granted a parole date. *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d
2  1123, 1128 (9th Cir. 2006); *Biggs*, 334 F.3d at 914; *McQuillion*, 306 F.3d at 903. Accordingly,
3  this court must examine whether the deprivation of petitioner's liberty interest in this case lacked
4  adequate procedural protections and therefore violated due process.

5  Because "parole-related decisions are not part of the criminal prosecution, the full
6  panoply of rights due a defendant in such a proceeding is not constitutionally mandated."
7  *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and
8  citation omitted). Where, as here, parole statutes give rise to a protected liberty interest, due
9  process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded
10 notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the
11 reasons for the denial. *Id.* at 1390 (quoting *Greenholtz*, 442 U.S. at 16). *See also Morrissey v.*
12 *Brewer*, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving
13 parole issues). Violation of state mandated procedures will constitute a due process violation
14 only if the violation causes a fundamentally unfair result. *Estelle v. McGuire*, 502 U.S. 62, 65
15 (1991).

16 Petitioner claims that the BPT violated his due process rights when it denied his request
17 for a copy of his trial transcripts for the Board's consideration at the March 7, 2001 parole
18 suitability hearing. He contends that the transcripts would have demonstrated that the BPT's
19 "reason for denying parole was based on false and incorrect information." Pet., Ex. A at
20 consecutive p. 4. Petitioner provides the following explanation in support of his claim:

> Hoff testified at Petitioner's arraignment, alleging that she did not actually see petitioner strike the victim, because she had run down the street when the victim came between her and Barbara Ann Hines. She also testified she never saw petitioner with the baseball bat, i.e., Hoff testified she never saw what took place between the petitioner and victim. At petitioner's trial, Clair Hoff changed her testimony and testified she saw petitioner hit the victim twice with the baseball bat. Even though Hoff was the trial prosecutor's witness, the prosecutor, during closing arguments, conceded that Hoff had perjured herself, several times, but argued Hoff should be believed nonetheless.

9

> Another allegation made at trial was that during Hine's and Hoff's physical altercation, Hoff tried to flee but that petitioner blocked her egress, resulting in Hoff being cut across the back by Hines with a piece of broken vase, resulting in 18 stitches. In Count One of Hine's charging Information, she was charged with 'Assault By Means of Force Likely to Produce Great Bodily Injury and With A Deadly Weapon – a Vase." At her trial (held separate from petitioner's), Hines was found *not guilty* of assaulting Hoff with the piece of broken vase and causing 18 stitches.
>
> At petitioner's March 07, 2001, Tenth parole suitability hearing, the BPT panel denied him parole, citing the above facts surrounding the crime as noted above, i.e., that petitioner blocked Hoff's egress and that he hit the victim twice with the baseball. At petitioner's previous Nine suitability hearings, the BPT used the same information which was derived solely from Hoff's testimony at petitioner's trial, and which was contained in the Probation Report, which the BOT relied upon for the facts involving the commitment offense.

*Id.* at consecutive pgs. 4-5. Petitioner is apparently claiming that his trial transcripts would have cast doubt on Hoff's trial testimony that petitioner hit the victim twice with the baseball bat and that the record of Hines' acquittal would have contradicted testimony at petitioner's trial that he blocked Hoff's "egress," thereby enabling Hines to attack her. *See id.* at consecutive p. 9. Petitioner denies that he blocked Hoff's exit from the house. *Id.* at consecutive p. 10. He also contends that Hines did not see petitioner assault the victim, contrary to her trial testimony. *Id.* Petitioner argues that his version of the events "is true and has been true at all Nine (9) parole hearings, and that the BPT used an incorrect version of the facts to find him unsuitable for parole." *Id.* at consecutive p. 9.

     As noted by the California Court of Appeal, petitioner was allowed to present his side of the story at his parole consideration hearing. Answer, Ex. D. Upon questioning, he conceded that he hit the victim with the baseball bat, causing his death. *Id.* at 12-13, 14, 18, 36. Under these circumstances, the truth of Hines' testimony as to whether she did or did not see petitioner hit the victim is irrelevant. The Board was entitled to rely on petitioner's concession at the hearing that he was responsible for the victim's death.

////

1    With regard to whether petitioner's actions enabled Hines to attack Hoff, petitioner
2 conceded at the March 7, 2001, hearing that he "got [himself] in the middle of a fight" between
3 Hines and Hoff. *Id.* at 9. Petitioner denied that Hines' injuries required stitches. *Id.* at 10-11.
4 There was no discussion at the hearing of whether petitioner blocked Hoff from exiting the
5 house, thereby enabling Hines to attack her. Moreover, the Board commissioner did not mention
6 this issue when he pronounced the reasons for the Board's decision to find petitioner unsuitable
7 for parole. Petitioner's involvement, if any, in Hoff's injuries did not appear to have any
8 significant impact on the Board's decision. Under these circumstances, trial transcripts
9 supporting petitioner's contention that he was not responsible for Hoff's injuries would not have
10 changed the Board's decision to deny petitioner parole eligibility. The Board based its decision
11 to deny petitioner a parole date solely on petitioner's actions with regard to the victim.

12    This court also notes that it is not clearly established federal law that prisoners being
13 considered for parole have a right to trial transcripts at parole revocation hearings. When the
14 Supreme Court identified the basic requirements of due process at a parole hearing, it did not
15 indicate that the potential parolee must have access to his trial transcripts. *Greenholtz,* 442 U.S.
16 1, 15-16 (1979).

17    As explained above, this court directed respondents to provide further briefing on
18 petitioner's due process claim in light of *Biggs v. Terhune*. In California, the setting of a parole
19 date for a state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal.
20 Code Regs. tit. 15, §§ 2401 & 2402. The requirements of due process in the parole suitability
21 setting are satisfied "if some evidence supports the decision." *McQuillion*, 306 F.3d at 904
22 (citing *Superintendent v. Hill*, 472 U.S. 445, 456 (1985)); *Powell v. Gomez*, 33 F.3d 39, 40 (9th
23 Cir. 1994) (citing *Perveler v. Estelle*, 974 F.2d 1132, 1134 (9th Cir. 1992)). For purposes of
24 AEDPA, *Hill*'s "some evidence" standard is "clearly established" federal law. *See Sass*, 461
25 F.3d at 1129 (citing *Hill*, 472 U.S. at 456 (1985)). "The 'some evidence' standard is minimally
26 stringent," and a decision will be upheld if there is any evidence in the record that could support

11

the conclusion reached by the factfinder. *Powell*, 33 F.3d at 40 (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." *Jancsek*, 833 F.2d at 1390. *See also Perveler*, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint*, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. *Id.*

In *Biggs*, the Court of Appeals for the Ninth Circuit indicated, in dicta, that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation. While the Ninth Circuit rejected several of the reasons given by the BPT for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. 334 F.3d at 913. However, the court cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to that offense in denying parole could violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest in parole.

*Id.* at 916. The court also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. at 917.

In *Sass*, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his convicted offenses in combination with his prior offenses. 461 F.3d at 1126. Citing *Biggs*, the petitioner in *Sass* contended that reliance on these unchanging factors violated due process. The Ninth Circuit disagreed, concluding that these elements amounted to "some evidence" to support the Board's determination. *Id.* at 1129. The court provided the following explanation:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Biggs*, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. *Cf. id.* The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

*Id.*

In this case, as in *Biggs* and *Sass*, the BPT's decision that petitioner was unsuitable for parole was supported by "some evidence" that bore "indicia of reliability." At the conclusion of the March 7, 2001, hearing, the Board found petitioner unsuitable for parole based upon the following: (1) the cruel manner in which the commitment offense was carried out; (2) the motive for the crime was trivial; (3) petitioner's prior record reflected an escalating pattern of criminal conduct; (4) petitioner had a history of drug use; (5) petitioner had not sufficiently participated in beneficial self-help programs; (6) petitioner did not have a realistic release plan; (7) the fact that the Los Angeles District Attorney filed a written opposition to a finding of parole suitability; and (8) the Board's belief that petitioner had only recently begun to tell the truth about his crime. Answer, Ex. D at 50-52, 38-40. Contrary to *Biggs*, this is not a case where petitioner's due process rights are implicated by repeated parole denials based upon continued reliance solely on

13

the unchanging factors of the commitment offense and conduct prior to imprisonment in the face of a positive psychological report and substantial evidence of remorse and rehabilitation. This court cannot say that the record of petitioner's March 7, 2001, suitability hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457. Accordingly, petitioner is not entitled to relief on his due process claim.

### 3. Equal Protection

As described above, petitioner originally included a claim in the instant petition that his Fourteenth Amendment right to equal protection was violated at the March 7, 2001, parole consideration hearing. The court concluded that petitioner had failed to state an equal protection claim because he did not allege that respondents, under color of state law, intentionally discriminated against him as a member of a class. *See* Order dated September 17, 2003. A petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision. *See McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973) (reviewing differences in release dates under rational basis test and balancing the state's efforts to ensure that prisoners are sufficiently prepared for release to protect public safety, on the one hand, with the prisoner's interest in release, on the other hand); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991). Petitioner has not made the required demonstration. Accordingly, petitioner's equal protection claim, if any, must be denied.

### 4. Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims. Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). He must also "allege[] facts that, if proved,

would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000). Petitioner has not demonstrated that any additional facts need to be determined in order to resolve the claims raised in the instant petition. Further, this court has determined that relief as to petitioner's claims must be denied on the merits because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts. Accordingly, an evidentiary hearing is not warranted on petitioner's claims. *See Williams*, 529 U.S. at 445; *Earp*, 431 F.3d 1166.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 17, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE